OPINION OF THE COURT
SMITH, Circuit Judge.
Thousands of retired professional football players filed suit against the National Football League and various other defendants alleging primarily that the defendants failed to take reasonable actions to protect players from the risks associated with concussive and sub-concussive head injuries. The cases were consolidated before the U.S. District Court for the Eastern District of Pennsylvania. On July 7, 2014, the District Court issued an order that “preliminarily approved” a proposed class-action settlement agreement and “conditionally certified for settlement purposes only” the settlement class and subclasses. Petitioners, seven retired professional football players who object to the proposed settlement agreement and class certification, filed a Federal Rule of Civil Procedure 23(f) petition for permission to appeal the District Court’s July 7, 2014 order.
At issue in this request for interlocutory review is the nature of this Court’s jurisdiction under Rule 23(f). Because the Dis *572 trict Court’s order was not an “order granting or denying class-action certification” under the plain text of the rule, we have dismissed the petition.[1]
I.
Plaintiffs are retired professional football players who played in a member club of the National Football League (“NFL”) and are not seeking active employment as players with any member club. Beginning in July 2011, retired professional football players began filing lawsuits alleging that Defendants NFL and NFL Properties, LLC (collectively “NFL Defendants”) failed to take reasonable actions to protect players from the chronic risks posed by concussive and sub-concussive head injuries.[2] In January 2012, after more than 5,000 retired professional football players brought suit, the Judicial Panel on Multi-district Litigation consolidated and transferred all pending cases to the U.S. District Court for the Eastern District of Pennsylvania for inclusion in coordinated or consolidated pretrial proceedings.
Plaintiffs and the NFL Defendants (collectively “the parties”) negotiated the terms of a settlement during a court-ordered mediation in the summer.of 2013.[3] Plaintiffs filed their class-action complaint on January 6, 2014 and sought an order: (1) granting preliminary approval of the proposed class-action settlement agreement; (2) conditionally certifying a settlement class and subclasses; (3) appointing co-lead counsel, class counsel, and subclass counsel; (4) approving the dissemination of class notice; (5) scheduling a fairness hearing; and (6) staying claims as to the NFL Defendants and enjoining proposed settlement class members from pursuing related lawsuits. In re Nat’l Football League Players’ Concussion Injury Litig., No. 2:12-md-02323-AB, Dkt. 5634 (E.D.Pa Jan. 6, 2014).
On January 14, 2014, the District Court denied the parties’ motion without prejudice. The District Court’s initial denial was based on its primary concern that “not all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid.” In re Nat’l Football League Players’ Concussion Injury Litig., 961 F.Supp.2d 708, 715 (E.D.Pa.2014). The District Court reasoned that the proposed $670,000,000 monetary fund may be inadequate to cover the likely amount of the awards to the class members. Id. at 715-16.
The parties renegotiated the proposed class-action settlement and, on June 25, 2014, filed another motion for preliminary approval and conditional certification of a revised settlement agreement. The revised settlement agreement “guaranteed payment of all valid claims” but put in place “additional measures designed to prevent fraudulent claims.” In re Natl Football League Players’ Concussion Injury Litig., No. 2:12-md-02323-AB, Dkt. *573 6073-5 at 23-24, 2014 WL 3510049 (E.D.Pa. June 25, 2014).[4] The parties also proposed that a “nationwide Settlement Class” be “conditionally certified, for settlement purposes only” and include three types of claimants and two subclasses.[5] Id. Dkt. 6073-1 at 4, 5.
On July 2, 2014, seven retired NFL football players (collectively “Objectors”) filed an objection to the June 25, 2014 revised classraction settlement agreement. Objectors argued that the revised settlement agreement could not be certified under Rule 23 because it bargained away, without adequate representation, the rights of three distinct groups of former players: (1) those suffering from, or displaying symptoms consistent with, chronic traumatic encephalopathy who did not die before preliminary approval; (2) those who have suffered or are at risk of suffering a stroke or non-football traumatic brain injury; and (3) those who played in NFL Europe. Additional defects raised by Objectors include that: the proposed notice was false and misleading; the claims process was so onerous and confusing that it raised due process and fairness concerns; the settlement agreement was not the *574 product of arm’s length negotiation; and that class counsel conducted no discovery by which to evaluate the strength of the claims and defenses.
On July 7, 2014, the District Court issued an order and memorandum in which the “proposed Class Action Settlement Agreement [was] preliminarily approved” and “[t]he Settlement Class and Subclasses [were] conditionally certified for settlement purposes only.” In re Nat’l Football League Players’ Concussion Injury Litig., 301 F.R.D. 191, 197, 204 (E.D.Pa.2014). In the District Court’s supporting memorandum, it explained that Rule 23(e)(2) requires court approval of the settlement of a class action. A “Preliminary Approval of the Proposed Settlement” was set forth by the District Court as:
“typically proceeding] in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. See Fed.R.Civ.P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. See Fed.R.Civ.P. 23(e)(1)(B). If the court concludes that the settlement is ‘fair, reasonable and adequate,’ the settlement is given final approval. Fed.R.Civ.P. 23(e)(2). At this time, Plaintiffs request that I grant preliminary approval.”
Id. at 197. After conducting a preliminary review of the settlement agreement, the District Court proceeded to analyze the parties’ request for “conditional certification” of the proposed class.
The District Court premised its analysis of “Conditional Certification of the Settlement Class and Subclasses” with the following standard of review:
“A court must determine whether the proposed Settlement Class and Subclasses satisfy the requirements of Federal Rule of Civil Procedure 23. See Sullivan v. DB Invs., Inc., 667 F.3d 273, 296 (3d Cir.2011) (en banc). At the preliminary approval stage, a court may conditionally certify the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing. See Manual for Complex Litigation (Fourth) § 21.632 (2004).”'
Id. at 199-200.
For the purposes of effecting the proposed Rule 23(e) settlement process, the District Court appointed co-lead class counsel, class counsel, and subclass counsel, approved the dissemination of class notice, and scheduled a fairness hearing for November 19, 2014. Id. at 204-07. The District Court also stayed any matters as they related to the NFL Defendants and enjoined proposed class members from pursuing any related lawsuits. Id. at 203-204, 207. On July 21, 2014, Objectors filed this petition for leave to appeal from the District Court’s July 7, 2014 order.
II.
The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332 and is administering the coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. A “party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court.” Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir.2004). Whether we have jurisdic *575 tion under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f) to review “an order granting or denying class-action certification” is the issue before us. A “‘federal court always has jurisdiction to determine its own jurisdiction.’ ” White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir.2010) (quoting United States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)). “We generally exercise plenary review over jurisdictional questions.” Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 247 (3d Cir.2013). “If we determine that we do not have jurisdiction over this appeal, our only function remaining will be that of announcing the fact and dismissing the case.” , In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II), 751 F.3d 150, 155 (3d Cir.2014) (alternations, citations, and internal quotation marks omitted).
III.
Objectors raise various substantive challenges to the merits of the District Court’s July 7, 2014 order. Before we can consider the merits of any appeal, it is first necessary to determine whether we have appellate jurisdiction. A federal appellate court generally has jurisdiction over appeals only from the entry of a final judgment by a district court, subject to certain limited exceptions. See 28 U.S.C. § 1291; Cunningham v. Hamilton Cnty., 527 U.S. 198, 200, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). Such is the limited nature of federal jurisdiction that “we have an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties’ positions.” In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II), 751 F.3d 150, 155 (3d Cir.2014) (quoting Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265, 269 (3d Cir.2013)) (internal quotation marks omitted). As aptly explained by Chief Justice Warren:
“It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in the light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction.”
Carroll v. United States, 354 U.S. 394, 399, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957).
There are various exceptions to the general principle that appellate jurisdiction is limited to final orders. See, e.g., 28 U.S.C. § 1292(a) (granting appellate jurisdiction over certain types of interlocutory orders); 28 U.S.C. § 1292(b) (allowing a district judge to certify an order involving a “controlling question of law as to which there is substantial ground for difference of opinion” and where “immediate appeal from the order may materially advance the ultimate termination of the litigation”); Fed. R.Civ.P. 54(b) (permitting a district court to certify “a final judgment as to one or more, but fewer than all, claims or parties” for appellate review); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (permitting immediate appeal of an otherwise non-final collateral order under certain circumstances).
The very narrowness of appellate jurisdiction is designed to discourage piecemeal litigation. Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 244 (3d Cir.2013). Limited appellate jurisdiction prevents parties from employing tactics to “obtain review of discovery orders, evidentiary rulings, or any of the myriad decisions a *576 district court makes before it reaches the merits of an action.” Id. at 245-46.
A.
Rule 23(f) provides in relevant part: “A court of appeals may permit an appeal from an order granting or denying class-action' certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered.” Fed.R.Civ.P. 23(f). Before the enactment of Rule 23(f), it was well settled that a “class certification decision, per se, is not an appealable final order under 28 U.S.C. § 1291.” Sullivan v. Pacific Indem. Co., 566 F.2d 444, 445 (3d Cir.1977). Appellate courts were generally reluctant to grant interlocutory review of class certification orders. Courts that did grant such review used various devices, such as a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), see In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293 (7th Cir.1995), or exercised jurisdiction after a district court certified the non-final, interlocutory order for appellate review pursuant to 28 U.S.C. § 1292(b), see Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996).
Yet courts were confronted by the reality that an extraordinary writ is just that, extraordinary. See In re Sch. Asbestos Litig., 977 F.2d 764, 772 (3d Cir.1992), as amended (Oct. 8, 1992) (“As the adjective ‘extraordinary’ implies however, courts of appeals must be chary in exercising that power: ‘[Mjandamus must not be used as a mere substitute for appeal.’ ” (quoting Roche v. Evaporated Milk Ass’n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943))). Accordingly, even courts granting writs of mandamus did so “with an uneasiness that their actions stretched the writ’s traditionally restrictive parameters.” Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 163 (3d Cir.2001), as amended (Oct. 16, 2001). And as to § 1292(b) interlocutory appeals, these were rare because a district court must first certify an order for appellate review under limited parameters. 28 U.S.C. § 1292(b). Specifically, a district court would need to conclude that the “order involves a controlling question of law as to which there is substantial ground for difference of opinion” and “that an immediate appeal from the order may materially advance the ultimate termination of the litigation.” Id.
It was not until the Seventh Circuit’s decision in In re Rhone-Poulenc Rorer, Inc. to exercise mandamus that the Advisory Committee on Civil Rules began to seriously explore reforms to appellate review and federal jurisdiction over class-action certification decisions. See Robert H. Klonoff, The Decline of Class Actions, 90 Wash. U.L.Rev. 729, 739 (2013). In promulgating Rule 23(f), the Advisory Committee exercised its authority under 28 U.S.C. § 1292(e) and sought to “[e]x-pan[d] ... opportunities to appeal.” Fed. R.Civ.P. 23(f) advisory committee’s notes (1998 amendments).[6] The decision wheth *577 er to allow appeal from an order granting or denying certification, however, was left to the “sole discretion of the court of appeals.” Id.
Subdivision (f) was added to Rule 23 in 1998 to provide a form of interlocutory review over class-action certification decisions. The reason for adding subdivision (f) was that the class-action “certification decision is often decisive as a practical matter.” Id. The Judicial Conference’s Committee on Rules of Practice and Procedure (“Standing Committee”) explained:
“Denial of certification can toll the death knell in actions that seek to vindicate large numbers of individual claims. Alternatively, certification can exert enormous pressure to settle. Because of the difficulties and uncertainties that attend some certification decisions—those that do not fall within the boundaries of well-established practice'—the need for immediate appellate review may be greater than the need for appellate review of many routine civil judgments.”
1997 Report at 18-19.[7] The Advisory Committee’s notes to the 1998 Amendments to Rule 23(f) provide:
“Appeal from an order granting or denying class certification is permitted in the sole discretion of the court of appeals. No other type of Rule 23 order is covered by this provision. The court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certio-rari.”
Fed.R.Civ.P. 23(f) advisory committee’s notes (1998 amendments) (emphasis added).[8]
In light of this drafting history, parsing the text of Rule 23(f) is fundamental to understanding the nature of the interlocutory review contemplated by this provi *578 sion. To begin, Rule 23(f) is premised on the notion that a court of appeals’ grant of a petition for interlocutory review is discretionary. The rule states that a “court of appeals may permit an appeal.” Fed. R.Civ.P. 23(f) (emphasis added). References in the Advisory Committee’s notes that appeals are in the “sole discretion of the court of appeals” and that the court of appeals is given “unfettered discretion whether to permit the appeal” support this reading. Fed.R.Civ.P. 23(f) advisory committee’s notes (1998 amendments).
In Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., we recognized the discretionary nature of our review: Rule 23(f) “provide[s] for interlocutory appeal by permission of the court of appeals” and “permits the appellate courts to develop a coherent body of jurisprudence in this area.” 259 F.3d at 162. There are five flexible principles from the Advisory Committee’s note that may guide our exercise of discretionary jurisdiction.[9] Id. at 164— 65. The Advisory Committee’s taxonomy is not exclusive, however, and is not intended to “circumscribe our discretion; there may also be other valid reasons for the exercise of interlocutory review.” Id. at 165. Accordingly, Newton makes clear that the beginning text of Rule 23(f), which provides that “[a] court of appeals may in its discretion permit an appeal,” Fed. R.Civ.P. 23(f) (emphasis added), was itself a delegation of authority to the courts of appeals to determine when to grant a Rule 23(f) motion and to develop a jurisprudence to guide such determinations.
What Newton and its progeny do not discuss, and what this Court has yet to address, is the type of order this Court may review. The plain text of Rule 23(f) provides the courts of appeals with discretion to permit an appeal from a specific type of order—that is, “from an order of a district court granting or denying class-action certification.” Fed.R.Civ.P. 23(f) (emphasis added). The Advisory Committee’s notes to the 1998 Amendments to Rule 23(f) explain: “No other type of Rule 23 order is covered by this provision.” Fed.R.Civ.P. 23(f) advisory committee’s notes (1998 amendments). There is only one subdivision within Rule 23 governing class-action certification orders: Rule 23(c).[10] In this way, the text of Rule 23(f) inextricably ties the type of order appeal-able to Rule 23(c).[11]
*579 When Rule 23(f) was enacted in 1998, Rule 23(c) permitted a district court to “conditionally certify” a proposed class. In 2003, concerned that district courts were conditionally certifying putative class actions without undertaking a thorough analysis of the Rule 23(a) and (b) certification requirements, the Supreme Court and Congress deleted the portion of Rule 23(c)(1) that provided that class certification “may be conditional.” Fed.R.Civ.P. 23(c) advisory committee’s notes (2003 amendments).[12] The Advisory Committee’s notes directed that “[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.” Id. Rule 23(c)(1) was also altered to “require that the determination whether to certify a class” be made “at an early practicable time,” rather than “as soon as practicable.” Id. (internal quotation marks omitted). This change was made because district courts may need time “to gather information necessary to make the certification decision.” Id. The other notable change within Rule 23(c)(1) was with relation to the “provision that permits alteration or amendment of an order granting or denying class certification.” Id. The 2003 Amendments changed the “cut-off point” to alter a class-action certification order “at final judgment rather than ‘the decision on the merits’ ” in order to avoid “the possible ambiguity in referring to ‘the decision on the merits.’ ” Id. This ambiguity stemmed from the reality that after determining liability and in analyzing a remedy, there may be “the need to amend the class definition or subdivide the class.” Id.
Under the present structure of Rule 23(c), we made clear in Hohider v. United Parcel Service, Inc. that a district court was no longer permitted to issue a “conditional certification.” 574 F.3d 169, 202 (3d Cir.2009).[13] In Hohider, we analyzed a litigation class seeking certification over “pattern-or-practice claims of discrimination under Title VII of the Civil Rights Act of 1964.” Id. at 173-74. After analyzing the merits-based claims that could be subject to certification, the trial court “determined plaintiffs’ claims for compensatory and punitive damages could not be certified for classwide treatment under Rule 23(b)(2).” Id. at 175. The trial court, however, “withheld judgment on plaintiffs’ back-pay claims” reasoning that there could be “a protocol for identifying those monetary damages.” Id. We rejected such an approach. We held that the trial *580 court’s “conditional certification of plaintiffs’ request for back pay was improper” because “[a] trial court must ‘make a definitive determination that the requirements of Rule 23 have been met before certifying a class.’ ” Id. at 202 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir.2008)). Our ruling was based on the “2003 amendments to Rule 23 [that] ‘eliminated the language that had appeared in Rule 23(c)(1) providing that a class certification ‘may be conditional.’” Id. (quoting In re Hydrogen Peroxide, 552 F.3d at 319).[14]
In short, Rule 23(f) provides the court of appeals broad discretion in granting interlocutory review, but only as to one type of Rule 23 order: a class-action certification order issued pursuant to Rule 23(c)(1).
B.
The issue of class certification pursuant to Rule 23(c)(1) may also be relevant to the treatment of class-action settlements under Rule 23(e), which provides the procedures applicable to proposed settlements, voluntary dismissals, or compromises.[15] *581 The approval of a class-action settlement is governed by Rule 23(e)(2), which specifically requires that a district court approve a settlement agreement only “after a hearing and on finding that it is fair, reasonable, and adequate.” Fed.R.Civ.P. 23(e)(2). Thus, when a district court is presented with a class settlement agreement, the court must first determine that “the requirements for class certification under Rule 23(a) and (b) are met, and must separately ‘determine that the settlement is fair to the class under [Rule] 23(e).’ ” Sullivan, 667 F.3d at 319 (quoting In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257 (3d Cir.2009)). The intent of these procedures is to provide transparency for class members and authority to the district court to act as a fiduciary for putative class members by “guarding the claims and rights of absent class members.” See Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir.2010).
What renders these seemingly straightforward directives less than clear is the procedural posture presented when a class-action settlement is reached before the district court has issued a certification order under Rule 23(c). The Advisory Committee’s notes to the 2003 Amendments do contemplate that “the decisions on certification and settlement” may “proceed simultaneously.” Fed.R.Civ.P. 23(e) advisory committee’s notes (2003 amendments). Further, even where class certification has already occurred, a district court’s review of a settlement “may provide an occasion to review the cogency of the initial class definition.” Id.
The exact process a district court should follow when presented with a “settlement class” is not prescribed by Rule 23(e). A settlement class “offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification. Often ... the parties never intend to litigate the claims; rather, from the time plaintiffs file the complaint, the goal on both sides is to reach a nationwide settlement.” In re Cmty. Bank of N. Va., 418 F.3d 277, 299 (3d Cir.2005). Further, a district court’s management of a settlement class is different from a litigation class in that the court is acting as fiduciary “to protect unnamed members of the class.” Ehrheart, 609 F.3d at 593; Sullivan, 667 F.3d at 296. These differences aside, “the ‘settlement only’ class has become a stock device.” Amchem, 521 U.S. at 618, 117 S.Ct. 2231.
Section 21.632 of the Federal Judicial Center’s Manual for Complex Litigation (Fourth) explains that the “[r]eview of a proposed class action settlement generally involves two hearings.”[16] Manual for Complex Litigation § 21.632 (4th ed.2004) *582 (hereinafter “Manual for Complex Litigation”). In the first hearing, or “preliminary fairness review,” “counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.” Id. In the context of a “preliminary fairness review” of an uncertified settlement class, § 21.632 provides that “the certification hearing and preliminary fairness evaluation can usually be combined.” Id. When combining a certification and preliminary fairness hearing:
“The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). See section 21.22. If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certifica *583 tion, proposed settlement, and date of the final fairness hearing.”
Id. (emphasis added).
This case management technique for un-certified settlement classes makes sense, particularly from a notice perspective. Rule 23(e)(1) requires the district court to “direct notice in a reasonable manner to all class members who would be bound by. the proposal.” Fed.R.Civ.P. 23(e)(1). The principal purpose of this provision is “to ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement.” 2 McLaughlin on Class Actions § 6:17 (10th ed.2013). This notice can be sent to putative class members before the district court issues a certification order or, “[i]n cases in which a litigation class has already been certified ... the- notice of settlement may also be sent to ... opt-outs to give them an opportunity to rejoin the class.” Id.
The preliminary analysis of a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation. In the context of a Rule 23(b)(3) opt-out class, this affords defendants the opportunity to determine whether there will be sufficient participation in the class before certifying the class and dispersing any settlement fund. This also allows the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims.
Arguably, the Manual for Complex Litigation does not-reconcile a “preliminary determination” under Rule 23(e) of class certification with the elimination of conditional certification under Rule 23(c). Although the Federal Judicial Center’s current version of the Manual for Complex Litigation was published in 2004, it is unclear whether the drafters had the opportunity to address the nuances between subdivisions (c) and (f) of Rule 23 following the 2003 Amendments.[17] Despite that, many district court judges rely, and rightfully so, on the Manual for Complex Litigation in managing class actions.
In light of the interplay between subdivision (c), (e), and (f) of Rule 23, we emphasize that a district court should be fastidious in its choice of language when making a “preliminary determination” as recommended by § 21.632.[18] To be clear: *584 “conditional certification” should not be a preferred term of art in this Circuit. District courts should not couch a ruling as providing “conditional certification” when they actually intend to issue a certification order at a later date. Instead, district courts should more appropriately note that they are conducting a “preliminary determination” regarding class certification for a settlement class in order to provide notice to absent class members and that they are reserving the certification decision for a later date. Conditional certification rulings are not contemplated under Rule 28(c)(1) and district courts always have the ability to amend and alter an order before final judgment under Rule 23(c)(1)(C). See Hohider, 574 F.3d at 202; In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 320. Courts wishing to actually make a class-action certification decision at a preliminary fairness hearing should do so by issuing an order pursuant to Rule 23(c)(1) and without reference to the order being “conditional.”
C.
We hold that an interlocutory appeal pursuant to Rule 23(f) permits the court of appeals to review only an “order granting or denying class-action certification” issued pursuant to Rule 23(c)(1). An order issued under some other subdivision of Rule 23, such as a case management order issued pursuant to Rule 23(e) that “preliminarily” or “conditionally” addresses class certification but reserves the class certification determination for a later time, does not qualify as an “order granting or denying class-action certification” that is subject to interlocutory review under Rule 23(f)-[19] Such is the case before us. We conclude that the District Court’s July 7, 2014 order that “conditionally certified” the proposed settlement class and subclasses was not issued pursuant to Rule 23(c)(1). Instead, the District Court properly exercised its authority under Rule 23(e) and was managing a class-action settlement agreement as requested by the parties.
The structure and text of the District Court’s order and memorandum support this conclusion. Two aspects of the District Court’s order are telling. First, the District Court ordered that the “proposed Class Action Settlement Agreement is preliminarily approved” and that the “Settlement Class and Subclasses are conditionally certified for settlement purposes only.” In re Nat’l Football League Players’ Concussion Injury Litig., 301 F.R.D. at 204 (emphasis added). The order specifically couched review of the settlement agreement as “preliminary” and the class was only “conditionally certified for settlement purposes.”
Second, the District Court scheduled a fairness hearing for November 19, 2014 to “consider comments on and objections to the proposed Settlement Agreement and to consider whether: (a) to approve the Settlement Agreement as fair, reasonable, and adequate, pursuant to Rule 23 of the *585 Federal Rules of Civil Procedure, (b) to certify the Settlement Class and Subclasses, and (e) to enter the Final Order and Judgment as provided in Article XX of the Settlement Agreement.” Id. at 206-07 (emphasis added). This language clearly reveals that the District Court regarded its July 7, 2014 order as having not yet reached a Rule 23(c)(1) determination on class certification.
The notice template attached to the District Court’s order also made patent that the settlement itself was only “proposed” and identified the “proposed class representatives” and their lawyers. Id. at 208, Ex. 1. Had the District Court actually certified the class, the class representatives would not have been described as “proposed,” see Fed.R.Civ.P. 23(a)(4); rather, class counsel would have been appointed outright, see Fed.R.Civ.P. 23(c)(1)(B), 23(g).
Yet ultimately it is the content of the District Court’s memorandum that is most telling. The District Court began its discussion of “Conditional Certification of the Settlement Class and Subclasses” with the following standard of review:
“A court must determine whether the proposed Settlement Class and Subclasses satisfy the requirements of Federal Rule of Civil Procedure 23. See Sullivan v. DB Invs., Inc., 667 F.3d 273, 296 (3d Cir.2011) (en banc). At the preliminary approval stage, a court may conditionally certify the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing. See Manual for Complex Litigation (Fourth) § 21.632 (2004).”
In re Nat’l Football League Players’ Concussion Injury Litig., 301 F.R.D. at 199-200.
The District Court premised its Rule 23(a) and (b) analysis on the analytical approach suggested by § 21.632 of the Manual for Complex Litigation,[20] The District Court also made clear that its preliminary approval was “for purposes of providing notice.” Id. The District Court expressly provided in its memorandum that the proposed settlement class and subclasses “preliminarily satisfied]” the requirements of Rule 23(a) and (b). Id. at 202. The thoroughness and precision of the District Judge’s memorandum indicates that had she actually wished to certify the proposed class and subclasses, she would have done so and referenced Rule 23(c)(1). We .read the District Court’s order and memorandum as having expertly addressed the management of a settlement class and no more.
Accordingly, the District Court’s July 7, 2014 order reserved the determination of certification and fairness until after the November 19, 2014 hearing. The District *586 Court’s accompanying July 7, 2014 memorandum conducted only a basic and necessarily contingent analysis—in short, a “preliminary” analysis—of Rule 23(a) and (b) to determine whether the proposed approach to settlement and for providing notice to the putative class members were effective case management tools.
The District Court did not certify the class. Instead, it reserved the “rigorous analysis” prescribed by Hydrogen Peroxide until after the November 19, 2014 fairness hearing, at which a full record could be developed. We clarify for the first time for district courts in this Circuit that the Manual for Complex Litigation’s use of the phrase “conditional certification” should be avoided. Rather than use the word “conditional,” courts in a similar procedural posture should make clear that they are making a “preliminary determination” on class-action certification for the purpose of issuing notice of settlement, and that they are reserving the issuance of a certification order until after a fairness hearing. The certification order ultimately issued must necessarily be entered before the district court approves the class settlement, Sullivan, 667 F.3d at 296, but need not occur before providing notice under Rule 23(e)(1). Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members’ interests and efficiently evaluate the issues of class certification and approval of a settlement agreement.
Objectors disagree with this interpretation of the District Court’s order and contend that five basic points govern the analysis of our jurisdiction under Rule 23(f). None of these points are persuasive.
First, Objectors argue that the District Court need not issue a “final” class-action certification order for the court of appeals to have jurisdiction. This focus on a “final” order, however, misses the point. Rule 23(c)(1)(C) provides that an “order that grants or denies class certification may be altered or amended before final judgment.” Thus, all certification orders issued under Rule 23(c)(1) are as a practical matter “conditional” so far as they are subject to change before the district court enters final judgment. This means that a district court cannot grant “certification on the condition” that a Rule 23(a) or (b) -certification requirement is later met. Hohider, 574 F.3d at 202. The District Court premised its analysis on providing notice to absent class members before issuing an order on certification or approving the settlement agreement. Rather than limit Rule 23(f) appeals to “final” orders, our holding today is simply that a district court must issue an order pursuant to Rule 23(c)(1) before we have jurisdiction to conduct interlocutory review pursuant to Rule 23(f).
Objectors’ second point is that Rule 23(f) is intended to afford an opportunity for prompt correction of a district court’s error to spare the parties significant litigation or settlement costs. Here the District Court has yet to commit any error that we could correct. In fact, the very purpose of the July 7, 2014 order was to provide putative class members with notice so that they could meaningfully participate in the fairness hearing. Reviewing the July 7, 2010 order now would “greatly undermine the policy against piecemeal litigation.” Camesi, 729 F.3d at 246.
Regarding the issues of litigation and settlement costs, Objectors erroneously focus on the typical pressures facing a litigation class rather than a settlement class. In a traditional' litigation class, after a class-action certification order, the result could “sound the ‘death knell’ of the litigation on the part of the plaintiffs” or place “hydraulic pressure on defendants to set- *587 tie.” Newton, 259 F.3d at 162, 164 (citation and internal quotation marks omitted). Because the District Court reserved issuing its class certification order until after the fairness hearing, we are left with dead silence rather than a death knell. Moreover, there can be no application of hydraulic pressure where there has been no application of force at all. Here, NFL Defendants elected to negotiate a settlement agreement. The District Court’s “preliminary determination” regarding class certification did not so pressure NFL Defendants that they were forced to settle the pending lawsuits.
Third, Objectors cite to the “unfettered discretion” granted to courts of appeals in permitting a Rule 23(f) interlocutory appeal. As noted above, this cherry-picked phrase from the Advisory Committee’s notes to the 1998 Amendments fails to distinguish between the different textual components of Rule 23(f). Although the word “may” gives the courts of appeals unfettered discretion, that discretion is only applicable to appeals “from an order granting or denying class-action certification.” Fed.R.CivJP. 23(f).
We grant that there is some ambiguity in the 1998 Amendments regarding the type of order that may be subject to interlocutory review under Rule 23(f). The Advisory Committee’s notes to the 1998 Amendments to Rule 23(f) provide:
“The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is tentative. Even to a firm certification decision, a statement of reasons bearing on the probably [sic ] benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless.”
Fed.R.Civ.P. 23(f) advisory committee’s notes (1998 amendments) (emphasis added). References to a “tentative ” versus a “firm certification decision ” may indicate to some that “preliminary” or “conditional” certification decisions are properly subject to interlocutory review.
Although the Advisory Committee did not revise or cross reference these comments in the 2003 Amendments to Rule 23(c), the text of Rule 23(f) did not require such a revision. Rule 23(f) is tied by reference to “an order granting or denying class-action certification.” Therefore, an order is only reviewable under 23(f) once a district judge has actually issued an order granting or denying class certification under Rule 23(c)(1). As in the game itself, we do not have instant replay over all aspects of the parties’ progression prior to that point. Cf. Official Playing Rules of the National Football League, R. 15, § 9, Art. 5 (2013 ed.) (no jurisdiction to review an official’s determination as to what down it is).
Accordingly, any “unfettered discretion” held by the courts of appeals would be applicable to only “an order granting or denying class certification.... No other type of Rule 23 order is covered by this provision.” Fed.R.Civ.P. 23(f) advisory committee’s notes (1998 amendments) (emphasis added). Any question of what the Advisory Committee might have meant when referencing “tentative” is meaningless considering that “tentative” or “conditional” class-action certification orders are no longer permitted under Rule 23(c).
Objectors fourth point is that we should evaluate a district court’s “ruling on class certification” that is “likely erroneous.” See Newton, 259 F.3d at 164. This position presumes that there is a ruling available to analyze, which there is not. That ruling is *588 destined to be issued now that the District Court has conducted the November 19, 2014 fairness hearing. The use of the phrase “likely” in Newton cannot be read to imply that we should anticipate how a district court might err based on a Rule 23(e) preliminary determination of class certification. If such a reading of Newton were given warrant, courts of appeals could meddle at will in the district courts’ careful and thoughtful management in reviewing class settlement agreements.
Objectors’ final point also relies on Newton and our statement that our discretion to grant interlocutory review may be based on any consideration we deem persuasive. See id. at 165. This argument continues to misconstrue Newton as an answer to the open question before us: precisely what qualifies as an “order granting or denying class-action certification”? See Fed.R.Civ.P. 23(f). Although we “may permit an appeal” only from such an order, the discretion inherent in the word “may” cannot undermine the fact that Rule 23(f) pertains only to one type of order under Rule 23.
As a final matter, both parties cite to the Eighth Circuit’s decision in Liles v. Del Campo, 350 F.3d 742 (8th Cir.2003), as supporting their respective positions. Objectors argue that Liles stands for the proposition that an interlocutory appeal of an order granting preliminary proposed or “conditional” certification may be permitted under Rule 23(f). This contention stretches the logic of Liles. Liles did not address the scope of the court of appeals’ jurisdiction under Rule 23(f). The Eighth Circuit held the following:
“We conclude that an interlocutory appeal would be premature in this case. Several steps remain before the district court finally approves class certification and any settlement. To permit an appeal at this stage would unnecessarily delay the resolution of the litigation and further jeopardize the limited assets available for resolving the claims. Permission for an interlocutory appeal of the conditional class certification should therefore be denied.”
Id. at 746 (emphasis added).
Objectors quote the Liles Court’s statement that an interlocutory appeal “would be premature in this case,” id., and argue that there may be some case presenting a conditional certification question that would properly be addressed under Rule 23(f). A reading of the full paragraph, however, reveals that the Eighth Circuit was hesitant to review a district court’s order that does not “approve[ ] class certification and any settlement.” Id. As in this case, the Liles litigation involved a “joint motion for preliminary approval of a settlement agreement and for conditional class certification” that resulted from settlement negotiations. Id. at 744. The more sound reading of Liles is that there is simply nothing for a court of appeals to review under Rule 23(f) before the district court issues a certification order under Rule 23(c). Objectors’ interpretation of Liles is unpersuasive and the facts of this case present precisely the same problem, i.é., that there is nothing to review until the district court issues its certification order following the fairness hearing.
In sum, the District Court’s order and memorandum pursuant to Rule 23(e) that provided preliminary approval of the proposed class “for settlement purposes only” and explicitly reserved its certification order for a later date was not a class-action certification order under Rule 23(c). Accordingly, this Court lacks jurisdiction over Objectors’ petition.
IV.
Because the District Court has yet to issue “an order granting or denying class- *589 action certification,” we have dismissed the Rule 23(f) petition for lack of jurisdiction by our Order of September 11, 2014.

. On September 11, 2014, we entered the following Order: "The foregoing Petition of Objecting Class Members pursuant to Federal Rule of Civil Procedure 23(f) for Leave to Appeal from the District Court's Order granting Settlement Class Certification is denied. The Court will issue an Opinion in this matter at a later time." This Opinion provides the rationale for our Order.

. Various plaintiffs also brought suit against a helmet manufacturer, Riddell, Inc., and several of its affiliated entities (collectively "Riddell Defendants”). The Riddell Defendants are not parties to the class-action settlement at issue in this pending Rule 23(f) petition.

.On July 8, 2013, the District Court directed the parties to mediation before a retired district judge. On August 29, 2013, the parties signed a term sheet incorporating the principal terms of a settlement.

. The revised settlement created several'avenues for compensation: (a) a Baseline Assessment Program Fund of up to $75,000,000 to offer retired NFL Football Players one baseline neuropsychological and neurological examination to identify any neurological defects, id. at 18-21; (b) an uncapped Monetary Awards Fund to provide payment of cash Monetary Awards and Derivative Claimant Awards to Retired NFL Football Players diagnosed with a Qualifying Diagnosis and their Representative and Derivative Claimants, id. at 21-27; and (c) a $10,000,000 Education Fund to support education about cognitive impairment, safety, and injury prevention with regard to football players, id. at 27.

. The three types of claimants include:
(1) "All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or post-season of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ('Retired NFL Football Players’);”
(2) "Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players (‘Representative Claimants’); and”
(3)"Spouses, parents, children who are dependents or any other person who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ('Derivative Claimants’).”
Id. at 4.
The two subclasses of the Settlement Class consist of the following:
(1) "Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants; and,”
(2) "Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of Chronic Traumatic Encephalopathy.”
Id. at 5 (footnote omitted).
Because we do not address the merits of Objectors’ arguments, we decline to discuss whether the three types of claimants and subclasses satisfy the applicable Rule 23(a) and (b) requirements.

. When considering the meaning of the federal rules, "it is the Rule itself, not the Advisory Committee's description of it that governs.” Wal-Mart Stores, Inc. v. Dukes, - U.S. -, 131 S.Ct. 2541, 2559, 180 L.Ed.2d 374 (2011). However, the Advisory Committee’s notes on the federal rules are "of weight” in interpreting the meaning of the rules. Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (explaining that the Advisory Committee's notes on Rule 3 "although not determinative,” were "of weight” in the Court's "construction of the rule”); Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444, 66 S.Ct. 242, 90 L.Ed. 185 (1946) ("The fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency. But in ascertaining *577 their meaning the construction given to them by the Committee is of weight.”).
In Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 163 (3d Cir.2001), Judge Scirica grounded his analysis of when we may grant a Rule 23(f) appeal on the Advisory Committee's notes. Judge Scirica stated: "The Committee Note is always a good starting point.” Id. Similarly, Justice Scalia cited extensively to the Advisory Committee's notes in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. at 2558-59, when discussing whether a Rule 23(b)(2) class permitted individualized claims for damages. We consider the Advisory Committee's summary of the provisions of Rule 23(f) illuminating for purposes of our analysis, giving it such "weight” as is appropriate.

. See Report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United States and Members of the Judicial Conference of the United States 18 (September 1997) (hereinafter "1997 Report”),
http://www.uscourts.gov/uscourts/RulesAnd Policies/rules/Reports/ST9-l 997.pdf (last visited Nov. 18, 2014).
The Rules Enabling Act of 1934, 28 U.S.C. § 2071-2077, authorizes the Supreme Court to promulgate rules of procedure. The Supreme Court has delegated the oversight of the rulemaking process to the Judicial Conference, specifically the Standing Committee. The Standing Committee has five advisory rules committees, including the Advisory Committee on Civil Rules. See How the Rule-making Process Works, http://www.uscourts. gov/RulesAndPolicies/rules/about-rulemaking/ how-rulemaking-process-works.aspx (last visited Nov. 18, 2014).

. As a comparison to the writ of certiorari, 28 U.S.C. § 1254, the Supreme Court separates the question of what the court “may review” from what the Court "actually will choose to review,” which is a power that is “sparingly exercis[ed].” See Camreta v. Greene, - U.S. -, 131 S.Ct. 2020, 2033, 179 L.Ed.2d 1118 (2011) (emphasis added) (quoting Forsyth v. Hammond, 166 U.S. 506, 514, 17 S.Ct. 665, 41 L.Ed. 1095 (1897)) (exempting “one special category of cases from [the Court's] usual rule against considering prevailing parties' petitions”).

. Those principles are: "(1) when denial of certification effectively terminates the litigation because the value of each plaintiff's claim is outweighed by the costs of stand-alone litigation; (2) when class certification places inordinate or hydraulic pressure on defendants to settle, avoiding the risk, however small, of potentially ruinous liability; ... (3) when an appeal implicates novel or unsettled questions of law; in this situation, early resolution through interlocutory appeal may facilitate the orderly development of the law,” id. at 164; (4) when the district court's "ruling on class certification is likely erroneous,” id. (citation and internal quotation marks omitted); or (5) when review would “facilitate development of the law on class certification,” id. at 165.

. Rule 23(c)(1) governs a class-action certification order and has three relevant clauses:
"(A) Time to Issue. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.
(B) Defining the Class. Appointing Class Counsel. An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).
(C) Altering or Amending the Order. An order that grants or denies class certification may be altered or amended before final judgment.”
Fed.R.Civ.P. 23(c).

.As explained in detail below, it is entirely possible for a district court to be presented with an uncertified settlement-only class that would present both class-action certification issues under Rule 23(a), (b), and (c) and set *579 tlement approval issues under Rule 23(e). Rule 23(e), which governs class-action settlements, voluntary dismissals, or compromises, see infra note 15, "was designed to function as an additional requirement, not a superseding direction, for the 'class action’ to which Rule 23(e) refers.” Amchem, 521 U.S. at 621, 117 S.Ct. 2231 (emphasis added).

. The process to amend or enact a new federal rule of civil procedure is extensive and subject to multiple levels of review by: the Advisory Committee on Civil Rules, the Judicial Conference's Committee on Rules of Practice and Procedure, public commenters, the Judicial Conference of the United States, the Supreme Court, and Congress. Amchem, 521 U.S. at 620, 117 S.Ct. 2231 (citing 28 U.S.C. §§ 2073, 2074).

. We exercised jurisdiction in Hohider pursuant to 28 U.S.C. § 1292(e) and Rule 23(f). 574 F.3d at 175. In that case, the district court issued an order granting in part and denying in part the plaintiff's motion for certification. Hohider v. United Parcel Serv., Inc., 243 F.R.D. 147, 245 (W.D.Pa.2007) rev’d and remanded, 574 F.3d 169 (3d Cir.2009). Unlike here, the order in Hohider actually certified a class (albeit not the entire proposed class). Accordingly, that order was unquestionably issued pursuant to Rule 23(c)(1). Id.; Hohider, 574 F.3d at 174-75. Because of that, we proceeded to review the class certification order for abuse of discretion. Hohider, 574 F.3d at 175.

. The Second Circuit has taken a different approach with regard to a district court's use of the “conditional certification” terminology. In Denney v. Deutsche Bank AG, the Court held that district courts were still permitted to issue a conditional certification of a class for settlement purposes only. 443 F.3d 253, 269-70 (2d Cir.2006). The Denney Court reasoned that the real purpose of amending Rule 23(c) was not to eliminate "conditional certification” but, instead, "to ensure that courts understood their obligations when certifying a class.” Id. at 270. The Court concluded that in light of this intent,
“conditional certification survives the 2003 amendment to Rule 23(c)(1). Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met. These requirements should not be watered down by virtue of the fact that the settlement is fair or equitable. But if the requirements of Rule 23(a) and (b) are met, certification may be granted, conditionally or unconditionally.”
Id. (citation omitted) (footnote omitted).
Our opinion in Hohider did not reference Denney. The cases are factually distinguishable in that Hohider dealt with a litigation class involving some classes that had been certified and thus could be subject to interlocutory review under Rule 23(f). Although we were not presented in Hohider with the same jurisdictional question we consider here, we see no reason to question its logic as applied to a settlement class. In our view, there is no support for conditional certification where the,,Advisory Committee wrote that the "provision that a class certification 'may be conditional’ is deleted” and that "[a:] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.” The 2003 Amendments to Rule 23(c) indicate that a district court must make a definitive certification determination. This determination is not necessarily final, given the availability for revisions to a class certification order up to the time the district court issues a final judgment. See Fed R. Civ. P. 23(c)(1)(C). Yet, a district court calling its certification order "conditional” or "tentative” simply cannot be making a firm determination that the class satisfies the requirements of Rule 23(a) and (b). Given this interplay, we cannot agree with the Second Circuit’s interpretation of the 2003 Amendments to Rule 23(c) and reject the premise that "conditional certification” is an order subject to review under Rule 23(f).

. Rule 23(e) of the Federal Rules of Civil Procedure provides in full:
"Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
*581 (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.”
Fed.R.Civ.P. 23(e).

. Although the Manual for Complex Litigation "offer[s] helpful suggestions to judges,” Atkins v. Virginia, 536 U.S. 304, 327, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2001), it "does not have the force of law and can not undermine Supreme Court precedent or the decisions of this court.” In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 442 (3d Cir.2009); see also Manual for Complex Litigation, Introduction (explaining that the Manual "should not be cited as[] authoritative legal or administrative policy,” the Federal Judicial Center has "no authority to prescribe practices for federal judges,” and “[t]he Manual's recommendations and suggestions are merely that”).
*582 We address the recommendation of the Manual for Complex Litigation principally because it was the primary authority relied upon by the District Court in issuing its July 7, 2014 order. For that reason, the Manual is instructive only to the extent it informs the kind of order the District Court purported to issue. But our analysis regarding the meaning of the Rules themselves is in no way dependent on the Manual for Complex Litigation. See supra Section A.
Moreover, and in accordance with widespread experience, reference by appellate courts to the Manual for Complex Litigation when it is explicitly relied upon by a district court is commonplace. For example, the Supreme Court in Gulf Oil Co. v. Bernard ruled that the district court had abused its discretion in issuing an order imposing a ban on all communications concerning a class action between parties or their counsel and any actual or potential class member who was not a formal party. 452 U.S. 89, 91, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The district court’s order was based largely on a "Sample Pretrial Order” contained in the Manual for Complex Litigation. Id. at 93-94, 93 n. 4, 94 n. 5, 101 S.Ct. 2193. Analyzing the applicable text of Rule 23(d) governing "Orders in Conduct of Class Actions,” the Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties.” Id. at 101, 101 S.Ct. 2193. The Supreme Court explicitly rejected the district court’s adoption "in toto [of] the order suggested by the Manual for Complex Litigation—on the apparent assumption that no particularized weighing of the circumstances of the case was necessary.” Id. at 102-03, 101 S.Ct. 2193.
This Court has also, and repeatedly, engaged in close analysis of the Manual for Complex Litigation when it was the underpinning for a decision this Court was reviewing. See, e.g., In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 441 (3d Cir.2009) (vacating the order of a district court that cited portions of the Manual for Complex Litigation, analyzing the portions of the order, and concluding that the Manual references "clearly do[] not have the force of law and can not undermine [binding authority]”); United States v. Wecht, 484 F.3d 194, 231 n. 41 (3d Cir.2007), as amended (July 2, 2007) (criticizing a district judge for expressly relying on the Manual for Complex Litigation in a criminal trial and noting that it applies, by its own terms, to civil litigation). The Manual for Complex Litigation has also been cited where it provided useful guidance in interpreting an issue pertaining to class actions. For example, in Marcus v. BMW of North America, LLC, we referenced general principles and ideas from the Manual for Complex Litigation for the proposition that the "ascertainability” standard applicable to a Rule 23(b)(3) class promotes the “best notice practicable” under Rule 23(c)(2). 687 F.3d 583, 593 (3d Cir.2012) (citing Manual for Complex Litigation, § 21.222 (4th ed.2004)). And in In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315 (3d Cir.2001), we cited the Manual for Complex Litigation as authority regarding the equitable powers of the court in settlement administration.
In short, our analysis of the District Court’s July 7, 2014 order, the order's explicit reference to the Manual for Complex Litigation, and our explanation that the Manual does not adequately address how an order issued pursuant to Rule 23(e) relates to Rule 23(c) is analytically consistent with Bernard and entirely unremarkable.

. The dissent quotes our use of the word 'unclear' in this sentence and writes: "What all this [Section 21.632 of the Manual ] has to do with Rule 23(f) ‘is unclear.’ " The dissent rests on this language in its continued attempt to characterize this opinion as relying on the Manual for Complex Litigation to interpret the meaning of Rules 23(c) and (f), and how those Rules relate to Rule 23(e). To repeat, the Manual is not binding authority. In fact, the Manual is particularly unhelpful regarding the scope of Rule 23(f) interlocutory review given that it was published in 2004 and the relevant amendments to Rule 23(c) took effect December 1, 2003.

. The dissent characterizes this paragraph and various other parts of our reasoning as dicta. Broadly stated, dictum is defined “as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding— that, being peripheral, may not have received the full and careful consideration of the court that uttered it.' " In re McDonald, 205 F.3d 606, 612 (3d Cir.2000) (quoting Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir.1986)). Being clear about how district courts can best navigate our holding, to avoid confusion, is not something we regard as peripheral discussion. We consider it prudent to address the recommendation of the Manual for Complex Litigation in light of our holding regarding what type of Rule 23 order is subject to review under Rule 23(f).
Nor is the application of our holding to the facts in this case mere dicta. See Seminole *584 Tribe of Fl. v. Florida, 517 U.S. 44, 66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (explaining that the "well-established rationale" of a decision is not dicta). The central basis for our holding is that the review permitted by Rule 23(f) is bound to and limited by the decision of whether to grant or deny class certification, as permitted by Rule 23(c). Applying this principle to the District Court’s order is a necessary predicate to reaching our conclusion. See Galli v. N.J. Meadowlands Comm’n, 490 F.3d 265, 274 (3d Cir.2007) (explaining that reasoning in excess of what is necessary to reach a conclusion is dicta).

. As always, the substance of a ruling is what matters, not its label. An order that is for practical purposes a Rule 23(c)(1) class certification will not avoid appellate review simply because it is called something else.

. The District Court cited to our en banc decision in Sullivan for the proposition that "before approving a settlement agreement, 'a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met.’ ” 667 F.3d at 296 (quoting In re Pet Foods Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir.2010)). Sullivan does not address what a district court must do in conducting a "preliminary fairness hearing” where the district court reserves its certification ruling for a later date. Further, the rule from Sullivan is based on the Supreme Court's decision in Amchem, a case that did not address the procedural posture we face here. Amchem held only that for a settlement-only class "a district court need not inquire whether the case, if tried, would present intractable management problems,” but that the “other specifications of [Rule 23(b)(3)] ... demand undiluted, even heightened, attention in the settlement context.” 521 U.S. at 620, 117 S.Ct. 2231 (citation omitted). Further, Amchem was written at a time when conditional certification was expressly authorized by Rule 23(c); it could not, therefore, have addressed the procedural posture presented in this case.